FRANKE, Respondent, vs. NEISLER and wife, Appellants, and
LAPP, Respondent.

*October 5 — October 22, 1897.*

*Appeal: Change of venue: Practice: Transfer of mortgage: Foreclosure.*

1. Where, in an action against several defendants, the attorney for
the defendants presented to the court an affidavit for a change of
venue on the ground of the prejudice of the judge, signed by only
one of the defendants, and, on the judge's suggesting that the
others ought to sign it, such attorney tore it up and proceeded
without objection, *held,* that he must be deemed to have abandoned
the application.

2. The failure of the court in such case to amend its record on defend-
ant's motion by filing a substituted affidavit in place of the one
destroyed was not error.   That, if allowed, would not have changed
the aspect of the case.

3. Upon appeal in a foreclosure case, *held* that, if the finding of the
court was sustained by competent evidence, it would be presumed
that no weight was given to that which was incompetent and was
received under objection, and the judgment would not be reversed
on that ground.

4. A written assignment is not necessary to the transfer of a mort-
gage, but a transfer of the debt secured thereby carries with it
such mortgage.

5. Upon foreclosure of a mortgage executed by a husband and wife to
secure their joint note, it is improper to render a judgment for
deficiency against the wife, in the absence of evidence that she
has separate property.

6. A finding, in an action by an assignee to foreclose a mortgage se-
curing a note negotiable on its face, that the plaintiff was a *bona
fide* purchaser thereof, will be sustained notwithstanding the evi-
dence does not make it clear, if there is some evidence to support it.

APPEAL from a judgment of the circuit court for Milwau-
kee county: D. H. JOHNSON, Circuit Judge. *Affirmed in
part; reversed in part.*

The action is to foreclose a mortgage upon land.   The
mortgage was executed by the defendants *Robert Neisler*
and *Bertha Neisler,* his wife, to Christian Gottlieb Jaehnig

and Augusta, his wife, to secure their joint note of $1,200, due in one year, with interest. This money had been left with *Neisler* by Jaehnig on an oral understanding that an arrangement should be made whereby *Neisler* and his wife should afford the Jaehnigs a permanent home and a sufficient support during their remaining years. The mortgage was given, in terms, to secure the repayment of the money, absolutely; and the note was, in terms, negotiable. An agreement for such support was afterwards drawn and signed in duplicate, and both papers were left with Jaehnig, and neither was ever delivered to *Neisler*. After the death of Jaehnig, neither copy of the contract was found; and so the contract was not in evidence, and its exact terms are not known. The Jaehnigs, after living some nine months with the *Neislers*, became dissatisfied and left them. They went to live with the plaintiff, who is a grandson. To him they assigned the mortgage, and he supported them until the death of Christian. Augusta is still living. *Franke* sold an interest in the note and mortgage to the defendant *Lapp*, and attempted to assign it to her. The defense was, in effect, that by the terms of the lost contract the mortgage debt was to be paid by the promised support of the Jaehnigs, and not otherwise; that the defendants *Neisler* had always been prepared and willing to furnish the agreed support; that the plaintiff took the mortgage with notice of the agreement, and so was not a *bona fide* holder, but took the mortgage subject to this agreement.

After the cause had been called for trial the attorney for the defendants presented to the judge an affidavit of the defendant *Neisler* to the effect that he believed that, owing to the prejudice of the judge, he could not have a fair trial. The judge suggested that other parties should join in the affidavit and application. The defendant's attorney then took the affidavit and tore it up, and the trial proceeded without further objection.

The court found that this agreement for support was never completely executed by delivery to *Neisler*, and so did not become binding upon the Jaehnigs, and that the securities were valid in the hands of the plaintiff, and gave judgment for the foreclosure of the mortgage. From this judgment the *Neislers* appeal.

For the appellants there were briefs by *Weil & Fish*, and oral argument by *Fred S. Fish*. They contended that the affidavit for a change of venue was sufficient, and had the effect to oust the court of all further jurisdiction. *Fatt v. Fatt*, 78 Wis. 633; *Rines v. Boyd*, 7 id. 155; *Hewitt v. Follett*, 51 id. 264; *Northwestern Iron Co. v. Crane*, 66 id. 569; *Runals v. Brown*, 11 id. 185.

For the respondents there was a brief by *O'Neill & Marsh* and *W. W. Wight*, and oral argument by *James O'Neill*.

NEWMAN, J. The appellants allege errors as follows: (1) A change of the place of trial should have been granted; (2) the court should have amended its records, on appellant's motion, by filing a substituted affidavit in place of the one which was destroyed; (3) errors in the admission of evidence; (4) the assignment to the respondent *Lapp* is not operative, because it is blank as to the name of the assignee; (5) judgment for deficiency could not properly go against *Bertha Neisler;* (6) the plaintiff was not an innocent purchaser for value; (7) the note and mortgage were not transferable; and (8) the findings of fact, the conclusions of law, and judgment are all contrary to the law and the evidence.

1. Really, a change of the place of trial should never be granted unless some one wants it. The conduct of appellant's attorney showed that he did not care for it. His conduct was an acquiescence in the suggestion of the court, and an abandonment of his purpose to ask for a change. The court did not refuse the application. The application was withdrawn, which it was competent for the appellant's at-

torney to do.   The whole record shows that no one understood that an application for a change of the place of trial was being urged upon the court.   In this there is nothing of which the appellants can complain.

2. The amendment of the record in the respect proposed would not have changed the aspect of the question in the least.

3. If the findings are sustained by competent evidence, the admission of incompetent evidence is not error for which judgment will be reversed.   It will be presumed that the court gave no weight to incompetent testimony which was received under objection. *Hooker v. Brandon,* 75 Wis. 8; *Farr v. Semple,* 81 Wis. 230; *Rozek v. Redzinski,* 87 Wis. 525.

4. A writing was not necessary to a valid assignment of the mortgage to *Lapp.*   An interest in the debt might well be transferred to her without a written assignment.   The transfer of the debt carries the mortgage with it.   1 Am. & Eng. Ency. of Law, 835; *Emmons v. Dowe,* 2 Wis. 322, 361; *Croft v. Bunster,* 9 Wis. 503; *Woodruff v. King,* 47 Wis. 261; *Lane v. Duchac,* 73 Wis. 646, 654.   But really there is no reason why this question should disquiet the appellants.   It works no harm to them if *Franke* must divide his recovery with *Lapp.*

5. Judgment for deficiency should not go against the appellant *Bertha Neisler.*   She was a married woman at the time of the execution of the note and mortgage.   She is not shown to have had a separate estate.   So she is not liable to a personal judgment for deficiency.   But the error is purely technical, not substantial.   If she in fact has no separate estate, the judgment, if entered, cannot well work her any detriment.   Yet that part of the judgment must be reversed for the error. *Winner v. Kuehn, post,* p. 394.

6. It is not clear, on the evidence, how much knowledge *Franke* had of the transaction between the original parties to the mortgage.   Apparently he knew that the old people

Lewis vs. Chicago & Northwestern R. Co.

had given all their money to *Neisler*, and that he had agreed to take care of them.   It does not appear whether this agreement was absolute, or whether it was conditioned on the satisfaction of the old people with their treatment and the character of their maintenance.   Nor is it conclusively shown that Jaehnig ever assented to the terms of the contract as written.   His failure to deliver the copy to *Neisler* would seem to suggest that he did not intend to assent to or be bound by it.   So it cannot be said to be clear, upon the evidence, that *Franke* was not a *bona fide* purchaser.   At least, there is evidence which supports the finding.

7. On their face, the securities were transferable, which was sufficient to give title to a *bona fide* assignee.

8. All the objections intended to be included in this *omnium gatherum* specification of errors are believed to have been already sufficiently treated.

*By the Court.*— That part of the judgment appealed from which provides for a personal judgment for a deficiency against the appellant *Bertha Neisler* is reversed.   In all other respects the judgment is affirmed.   The respondent is to have costs (*Winner v. Kuehn, post*, p. 394).